FILED'07 FEB 27 15:39USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RITA STRAND,

        Plaintiff,

v.

AUTOMOTIVE MACHINISTS PENSION
TRUST,

        Defendant.

CV. 06-1193-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

        Plaintiff Rita Strand filed this action against Defendant Automotive Machinists Pension

Trust (the Trust) alleging a violation of ERISA, 29 U.S.C. § 1055. Strand has moved for

summary judgment on the sole issue of whether she is entitled to a 50% survivorship annuity

under ERISA because she did not validly waive her right to that option. At oral argument, the

Trust moved for cross summary judgment, arguing that the waiver is valid and, in the alternative,

if Strand is awarded benefits, the Trust is entitled to an offset.

Page 1 - FINDINGS AND RECOMMENDATION

For the reasons set forth below, Strand's Motion for Summary Judgment (No. 7) should be granted and the Trust's oral Motion for Summary Judgment should be granted in part and denied in part.

## LEGAL STANDARD

The question of whether a spouse's waiver should be recognized under a plan governed by ERISA is a purely legal issue which must be resolved according to the standards applicable to motions for summary judgment under Fed. R. Civ. P. 56. McGowan v. NJR Service Corp., 423 F.3d 241 (3d Cir. 2005).

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

When considering a motion for summary judgment, the district court's role is not to weigh the evidence, but merely to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Only after the moving party has made such a showing does the burden

shift to the opposing party to show that a genuine issue of fact remains. See Fed. R. Civ. P. 56(e).

To establish the existence of a genuine issue of material fact, the non-moving party must make an adequate showing as to each element of the claim on which the non-moving party will bear the burden of proof at trial. See Celotex Corp., 477 U.S. at 322-23. See also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Harper, 877 F.2d at 731. The opposing party may not rest on conclusory allegations or mere assertions, see Taylor, 880 F.2d at 1045; Leer v. Murphy, 844 F.2d 628, 631 (9th Cir. 1988), but must come forward with significant probative evidence, see Anderson, 477 U.S. at 249-50; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). The evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Taylor, 880 F.2d at 1045.

## FACTUAL BACKGROUND

Mrs. Strand is the widow of James Strand. Mr. Strand was a participant of 32 years in the Trust and was entitled to retirement benefits from the Trust.

The pension options available to employees and their spouses through the Trust were explained in the Automotive Machinists Pension Plan booklet (the Plan). According to the Plan, the employee and spouse were to elect one of the following benefit forms:[1]

A.    Life Annuity Option

B.    50% Survivor Option

---

[1]The court notes that these options were set forth various times and in various ways throughout the paperwork sent to the participant, but that this breakdown was agreed to by the parties in the concise statements of fact.

      C.      66-2/3% Survivor Option

      D.      100% Survivor Option

      E.      Social Security Adjustment Option.

The Election of Retirement Benefits form ("Election Form"), on which employees were to make their election, provided four different social security options: "Social Security Adjustment Option," "100% Survivor Social Security Option," "50% Survivor Social Security Option," and "66 2/3% Survivor Social Security Option." Under the first of these options, Social Security Adjustment Option, the surviving spouse would not receive survivor benefits.

The Election Form contained two consent provisions. The first consent provision stated,

> The Employee Retirement Income Security Act (ERISA) provides that the 50% Survivor Option is mandatory unless a different form is specifically elected by the employee with the consent of his/her spouse. A Survivor Option provides that your beneficiary will continue to receive retirement benefits for his/her lifetime after your death. Election of a Survivor Option necessitates reduction of the monthly amount the employee would otherwise receive.

Underneath that first consent provision, the Election Form provided four options: "100% Option," "50% Option," "66 2/3% Option," and "Social Security Option." Mr. Strand elected the "Social Security Option." Underneath his election, both Mr. and Mrs. Strand signed the Election Form and the document was properly notarized.

The second consent provision followed the signature and notarization blocks. That consent provision stated,

> If your spouse has elected the <u>LIFE ANNUITY OPTION</u> form of retirement payment, this form of payment cannot take effect unless you (a) consent in writing to your spouse's election of this form of payment, (b) waive the right to continue after his/her death to receive a pension during the remainder of your life at 50% of the

Page 4 - FINDINGS AND RECOMMENDATION

> rate paid while your spouse is alive, (c) acknowledge that you will
> receive no monthly pension payment if your spouse dies before
> you. * * * *

Mrs. Strand signed the second consent provision.

On February 24, 2005, Mr. Strand passed away. After Mr. Strand's death, the Trust

informed Mrs. Strand that she was not eligible for survivor benefits, either monthly or lump sum.

## ANALYSIS

The two issues before the court are whether Mrs. Strand is entitled to survivor benefits

under the Plan and, if so, whether the Trust is entitled to an offset.

Waiver

Resolution of the issue of whether Mrs. Strand is entitled to survivor benefits depends

solely on whether the waiver signed by Mrs. Strand is valid under ERISA. If the waiver is valid,

she is not entitled to benefits; if the waiver is not valid, she is entitled to an award of benefits.

Under ERISA and the Internal Revenue Code[2], the spouse of a pension plan participant is

entitled to receive survivor benefits of at least 50% unless the participant elects not to receive

survivor benefits and the spouse consents in writing to waive his or her right to the survivor

benefit. 29 U.S.C. § 1055(a); IRC §401(a)(11)(A). In order for a spousal waiver to be valid, the

following requirements must be satisfied:

> (i) the spouse of the participant consents in writing to such
> election, (ii) such election designates a beneficiary (or a form of
> benefits) which may not be changed without spousal consent (or
> the consent of the spouse expressly permits designations by the
> participant without any requirement of further consent by the

---

[2]When Congress enacted ERISA, it also enacted mirror-image counterparts for the
Internal Revenue Code to encourage employers, through tax benefits, to establish qualifying
pension plans. Hagwood v. Newton, 282 F.3d 285, 290 (4th Cir. 2002).

> spouse), and (iii) the spouse's consent acknowledges the effect of
> such election and is witnessed by a plan representative or a notary
> public.

29 U.S.C. § 1055(c)(2)(a); IRC §417(a)(2). The purpose of this requirement was "to afford better

protection to women dependent on their husbands' earnings and at the mercy of death or

divorce." Ablamis v. Roper, 937 F.2d 1450, 1453 (9th Cir. 1991) (citations and internal

quotations omitted). The formalities required for spousal waiver are included to protect against

the risks of a spouse's unwitting waiver of those rights. Lasche v. George W. Lasche Basic Profit

Sharing Plan, 111 F.3d 863, 867 (11th Cir. 1997) (noting that formalities are necessary "to ensure

a valid waiver of a spouse's retirement plan [and] are consistent with the legislative policy of

protecting spousal rights"). The formalities are, therefore, to be strictly enforced. Hagwood, 282

F.3d at 290.

The Election Form at issue here contains two consent provisions. First, there is the

consent provision entitled "Election of Form of Benefit and Spouse's Consent" immediately

preceeding Mr. Strand's election of the Social Security Option, Mr. and Mrs. Strand's signatures

and notarization. The second consent provision is simply entitled "Consent" and addresses the

implications of an election of the Life Annuity Option. At oral argument the Trust conceded that

the second consent provision, relating to the Life Annuity Option, did not constitute an adequate

waiver of Mrs. Strand's right to a survivor interest. The only consent to be considered, therefore,

is the first consent provision. As noted above, that consent provision states,

> The Employee Retirement Income Security Act (ERISA) provides
> that the 50% Survivor Option is mandatory unless a different form
> is specifically elected by the employee with the consent of his/her
> spouse. A Survivor Option provides that your beneficiary will
> continue to receive retirement benefits for his/her lifetime after

Page 6 - FINDINGS AND RECOMMENDATION

> your death. Election of a Survivor Option necessitates reduction of
> the monthly amount the employee would otherwise receive.

The Trust argues that the consent provision contains enough information to meet the

waiver requirements under ERISA §1055(c)(2)(a) and IRC §417(a)(2). The court disagrees.

While the consent provision states generally that a survivor option provides that benefits

continue after the death of the participant, the consent provision does not explicitly acknowledge

the effect of Mr. Strand's election of the Social Security Option. Mrs. Strand's waiver was not

sufficiently knowing to waive her right to survivor benefits in light of ERISA's policy of

protecting surviving spouses.

The Trust also argues that the consent is adequate when considered in the context of all of

the information supplied on the Election Form. Specifically, the Trust points to the breakdown

of options on the front page that explain the dollar amount of benefits under each option. Again,

the court disagrees. Even considering all of the information provided on the front and back of

the Election form, the consent provision does not clearly advise the spouse that election of the

Social Security Option will result in no survivor benefit. This ambiguity is compounded by the

inclusion of the second consent, which states that election of the Life Annuity Option results in

no survivor benefits. The failure to include a similar statement about the Social Security Option

creates the implication that the Social Security Option does not have a similar effect, that is,

elimination of survivor benefit.

Finally, the Trust argues that the waiver is valid because it complies with regulations

promulgated under IRC § 417. Strand argues in response, and the court agrees, that the

regulations quoted by the Trust correspond to IRC § 417(a)(3), and speak to the information to be

provided to the plan participant before he or she elects a pension form from the various options available, not the spousal waiver provisions in IRC § 417(a)(2) and are therefore irrelevant.

Because the waiver was not adequate under ERISA §1055(c)(2)(a) or IRC §417(a)(2), Mrs. Strand is entitled to benefits under the Plan.  At oral argument, the parties agreed that the default position under ERISA and the Plan, and the position that Mrs. Strand should be placed in, is the 50% Survivor Option.

**OFFSET**

Because the court has found that Mrs. Strand is entitled to 50% survivor benefits under the Plan, the court must address the Trust's argument that it is entitled to an offset of the amount by which the payments actually made to Mr. Strand during his lifetime exceeded the payments he would have received under the 50% survivor option.

ERISA provides that a plan may be entitled to an offset if the plan fiduciary acts in accordance with the fiduciary duties imposed by ERISA:

> If a plan fiduciary acts in accordance with part 4 of this subtitle in--
>
> (A)    relying on a consent or revocation referred to in paragraph (1)(A), or
> (B)    making a determination under paragraph (2),
>
> then such consent, revocation, or determination shall be treated as valid for purposes of discharging the plan from liability to the extent of payments made pursuant to such Act.

29 U.S.C.A. § 1055(c)(6).  The fiduciary standard for ERISA plan administrators is that of a "prudent man."  29 U.S.C.A. § 1104(a).

In Hearn v. Western Conference of Teamsters Pension Trust Fund, 68 F.3d 301 (9th Cr. 1995), the plan participant obtained a single life annuity by falsely informing the plan

Page 8 - FINDINGS AND RECOMMENDATION

administrator that he was single when in fact he was married. Id. at 303. After the participant

died, his widow applied for benefits, claiming that she had not consented to the waiver of

survivor benefits. The plan administrator argued that it was not liable to the widow because it

had acted in accordance with its fiduciary responsibility when it relied on the participant's

statement that he was single. Id. at 303. The widow did not argue that the plan administrator

breached a fiduciary duty. Id. She argued only that ERISA provided only an offset for payments

already made as opposed to a full discharge from any liability. Id. The court agreed, and

awarded the widow benefits to the extent those benefits exceeded the overpayments made to her

husband. Id. at 304.

Mrs. Strand argues that the Trust is not entitled to the protection of 29 U.SC. §1055(c)(6)

where the waiver is invalid on its face, and directs the court to Rice v. Rochester Laborers'

Annuity Fund, 888 F. Supp 494 (W.D.N.Y. 1995). There, the plan participant was separated but

still legally married and forged his wife's signature on a consent for a lump sum distribution. Id.

at 497. The plan administrator approved the lump sum distribution in spite of the fact that forty

days earlier the plan had received a letter from the wife's attorney stating that they feared the

husband would forge the wife's signature in an attempt to defraud her out of any rights to the

pension. Id. at 496. The court held that the plan administrator failed to act as a prudent

administrator, and awarded the wife her full survivor benefits. Id. at 499.

Here, Mrs. Strand did sign the consent provision, and the Trust believed that consent

provision to be a valid waiver of her survivor rights. The Trust did not ignore any obvious signs

or warnings that the waiver was not valid. The court finds that the Trust satisfied the prudent

man standard in satisfying its fiduciary responsibility. Accordingly, the Trust should be given an

Page 9 - FINDINGS AND RECOMMENDATION

offset of the amount by which the payments actually made to Mr. Strand during his lifetime exceeded the payments he would have received under the 50% survivor option.

## CONCLUSION

For the reasons set forth above, plaintiff's Motion for Summary Judgment (No. 7) should be GRANTED and Strand should be awarded 50% survivor benefits from defendant Automotive Machinists Pension Trust.  In addition, defendant's oral Motion for Summary Judgment should be GRANTED IN PART, allowing defendant an offset of the amount by which the payments actually made to Mr. Strand during his lifetime exceeded the payments he would have received under the 50% survivor option, and DENIED IN PART.  A judgment should be prepared.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due March 14, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this 27th day of February, 2007.

Honorable Paul Papak
United States Magistrate Judge